THE FIRST STAMFORD NATIONAL BANK AND TRUST COMPANY, as Trustee under the Will of AGNES C. BEMISH, Deceased, etc., Plaintiff, *v.* WILTON PIERCE, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, January 22, 1937.

■■■■■■■■■

*Wilber, Norman & Mosher,* for the plaintiff.

*Buhler, King & Miller,* for the defendant.

WATSON, J.    The action is for rent for the months of December, 1935, and January and February, 1936, under a lease, the term of which began February, 1935, and ended May 1, 1936.    The lease was made in the State of Connecticut on a form customarily used in that State.    The premises are located in the town of Stamford, Conn., and the plaintiff conducts its banking business there.    Plaintiff is trustee under the will of Agnes C. Bemish, deceased, for the benefit of one William Pitt and others.    Pitt, by the provisions of the will, is a life tenant of the demised premises. According to the testimony of the defendant, all negotiations leading up to the signing of the lease were had with Pitt and his wife.    The only direct contact which the defendant had with the plaintiff was on the occasion when he appeared at its bank building for the purpose of signing the prepared lease which he signed and left the building.    He had no communication or discussion with any of plaintiff's officers concerning the same.

Defendant thereafter went into possession of the premises and vacated the same the latter part of December, before the time fixed for the expiration of the term, and contends that there was a surrender and acceptance, effective December thirty-first, pursuant to an oral agreement.    He admits non-payment of rent for that month.

The oral agreement referred to is predicated on two conversations had between defendant and Pitt the latter part of November and about the middle of December.    In the first conversation defendant explained his critical financial condition, his inability to continue liability under the lease and stated that he would be forced to give up possession of the premises by reason thereof, to which proposition Pitt gave his assent and stated that the bank would not press defendant to live up to the terms of the lease and that he, Pitt, would see to it that such liability is not enforced. In the second conversation defendant reiterated the substance of his previous talk with Pitt and he was again assured that he could give up the premises and that he would be released from liability under the lease.    Subsequently defendant placed his furniture in storage and vacated before the end of December.    Pitt does not deny having had such conversations with the defendant, but he challenges the import given to them by Pierce and stated that he had no authority to accept a surrender of the premises and that he so told the defendant.    His testimony on this phase of the

controversy was unconvincing since he contradicted himself several times during his examination. I am, therefore, inclined to accept Pierce's version of the conversations in view of such contradiction and in the light of the other facts in the case. Plaintiff's vice-president and trust officer also testified that Pitt was without authority to terminate the lease or to accept surrender of the premises.

In the summer of 1935, during defendant's occupancy, and at the request of the defendant, a new heating system was installed with Pitt's permission, under an arrangement whereby defendant would pay the monthly charges in connection therewith and at the end of the lease the equipment would be taken over by the plaintiff as a charge against capital expense. The system was accordingly installed. At various times during defendant's tenancy matters concerning the premises were discussed by the defendant with Pitt alone or with Pitt and his wife. Before defendant had entirely moved from the premises redecoration of parts thereof was commenced at the instance or direction of Pitt and continued after defendant vacated. Following that, a new bathroom was added to the premises in January by Pitt's order. Assuming that Pitt was not clothed with authority to do these things, it seems incredible that his dealing with the property in the manner indicated and his several transactions with the defendant regarding the premises were done without knowledge of the plaintiff or without its tacit consent. Then, too, the evidence fails to reveal the person by whom the expense for redecoration and alteration was incurred. In the absence of proof indicating that it was assumed by one other than the plaintiff, it is a fair inference that such expense was borne by the plaintiff for the benefit of the estate for which it was acting as trustee.

When the work was done the plaintiff itself listed the premises with a real estate broker for reletting, through whom another tenant was procured, whose term, under a new lease with plaintiff, commenced March 1, 1936, two months before the expiration of defendant's term.

One of the cardinal principles of the law of agency is that the express or implied adoption of the acts of another for whom the other assumes to be acting, but without authority, constitutes ratification or confirmation of those acts. (*Stanton* v. *Granger*, 125 App. Div. 174, 179.)

In *Levitt* v. *Zindler* (136 App. Div. 695, 696) it is stated that " A surrender of leased premises is created by operation of law when the parties to the lease do some act so inconsistent with the relation of landlord and tenant as to indicate that both have agreed

to consider the surrender as made. (*Gray* v. *Kaufman Dairy & I. C. C. Co.*, 162 N. Y. 388.) " The court referred to the language of the Supreme Court of the United States in *Beall* v. *White* (94 U. S. 389), speaking of a surrender by operation of law, that " Such a conclusion may, in certain cases, arise by operation of law, as where the owner of a particular estate has been a party to some act, the validity of which he is by law afterwards estopped from disputing, and which would not be valid if his particular estate continued to exist. Textwriters agree that a surrender is the yielding up the estate to the landlord, so that the leasehold interest becomes extinct by mutual agreement between the parties. It is either in express words, by which the lessee manifests his intention of yielding up his interest in the premises, or by operation of law, when the parties without express surrender do some act which implies that they have both agreed to consider the surrender as made."

The lease reserved to the plaintiff no right of re-entry or to resumption of possession for the purpose of rerenting the premises as agent of the defendant or otherwise, where the defendant prematurely vacates or abandons the premises. A landlord has no right to enter on his tenant's premises during the term of the lease without the tenant's consent. (*Euclid Holding Co.* v. *Kermacoe Realty Co., Inc.*, 131 Misc. 466.) An entry by the landlord before the expiration of a term on premises demised is unlawful, though the tenant has removed from the premises, unless such right is reserved. (*Shannon* v. *Burr*, 1 Hilt. 39.)

The redecoration of the premises in December, the addition of a bathroom in January, following arrangements made prior to the surrender of the premises, the letting by the landlord of the premises thereafter for its own account to another tenant under a new lease, whose tenancy began two months prior to the expiration of the defendant's term, are, together, circumstances disclosing an intent by the plaintiff to resume possession for its own benefit and to accept the surrender of the premises. (*Fagelle* v. *Etna Importing Co.*, 133 N. Y. Supp. 465.) On these facts, it appears to me that the lease, in law, and the relationship of landlord and tenant which it created, came to an end. (*Moore* v. *Lynch*, 130 Misc. 385, 386.)

Liability of the defendant for rent for the month of December, 1935, having been admitted, plaintiff is entitled to judgment for the sum of seventy dollars, with interest from December 1, 1935.

Judgment accordingly.